United States District Court
Central District of Illinois, Urbana Division

**FILED**
JUN 22 2020
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

Jacob P. Pitts
                    plaintiff

Vs.                                     civil complaint no.

Michael Downey Kankakee County Sheriff,
Chad Kolitwenzew JCDC Director, J. Juergens JCDC C/O,
N. Henshaw JCDC C/O, __. Marcotte JCDC C/O, __. Deyoung
JCDC C/O, __. O'keefe JCDC C/O, __. Zanton JCDC C/O,
C. Norton JCDC C/O, __. Senasac JCDC corporal,
Tod Schloendorf JCDC sergeant, __. Austin JCDC corporal,
__. Neufeld, J. LeSage JCDC sergeant, Jake Johnsen JCDC C/O,
__. Coffey JCDC C/O, __. Brinkman JCDC C/O, S. Giaromatts
JCDC C/O, ~~individually and in their official capacity~~ A. Memenga
JCDC C/O, ~~Citizens~~
induvidualy and in their official capacity, Defendants

## Complaint

— Jurisdiction & Venue —

1)   This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 a)3). Plaintiff seeks declatory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injuctive relief are authorized by 28 U.S.C. Section 2283 and 2284 and rule 65 of the Federal Rule of Civil Procedure.

2)   The Central District of Illinois, Urbana Division is an appropriate venue under 28 U.S.C. Section 1391 b)2) because it is where the events giving rise to this claim occurred.

1

— Plaintiff —

3) Plaintiff, Jacob A. Pitts, is and was at all times mentioned herein a detainee of the State of Illinois in the custody of the Kankakee County Sheriff. He is currently confined in Jerome Combs Detention Center (herein after JCDC), in Kankakee, Illinois.

— Defendants —

4) Defendant, Michael Downey, is the Kankakee County Sheriff of the State of Illinois. He is legally responsible for the overall operation of the jails within Kankakee County.

5) Defendant, Chad Kolitwenzew, is the Director of JCDC, a jail within Kankakee County. He is legally responsible for the day to day operations of the jail.

6) Defendant, Tod Schloendorf, is a correctional officer of the Kankakee County Sheriff's department who, at all times mentioned in this complaint, held the rank of sergeant and was assigned to JCDC.

7) Defendant, ___. Senasac, is a correctional officer of the Kankakee County Sheriff's department who, at all times mentioned in this complaint, held the rank of corporal and was assigned to JCDC.

8) Defendant, ___. Austin, is a correctional officer of the Kankakee County Sheriff's department who, at all times mentioned in this complaint, held the rank of corporal and was assigned to JCDC.

9) Defendant, J. LeSage, is a correctional officer of the Kankakee County Sheriff's department who, at all times mentioned in this complaint, held the rank of corporal [or sergeant] and was assigned to JCDC.

2

10) Defendants, J. Juergens, N. Henshaw, ___. Marcotte, A. Menenga, ___. Deyoung, O'Keefe, ___. Zanton, ___. Norton, S. Liaromatis ___. Neufeld, Jake Johnsen, ___. Coffey, ___. Brinkman, are correctional officers of the Kankakee County Sheriff's department who, at all times mentioned in this complaint, held the rank of correctional officer and were assigned to KCDC.

11) Each defendant is sued individually and in their official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

— Exhaustion of Administrative Remedies —

12) The Plaintiff, Jacob P. Pitts, has exhausted available administrative remedies concerning the events mentioned herein. He has notified Defendants, Michael Downey, and Chad Kolitwenzew of the events mentioned herein by placing letters in KCDC facility mail service to be delivered by the U.S. postal service to them.

13) The Plaintiff, is being denied access to a request and complaint process in violation of Title 20 section 701.160c)1). He is currently only offered access to grievance and request forms, including medical request and postage and copy request, once every three days when he is brought to a KCDC intake area to shower. He is in restraints when provided access to the forms — hands cuffed and belted to his waist — and cannot complete these complex forms while in restraints and a area with no surface to write on without access to his other legal materials at the time. All defendants named herein have been informed by the Plaintiff of his inability to complete these forms under these conditions.

3

## -Facts-

14) Defendants, Michael Downey, Chad Kolitwenzew, and J. LeSage ordered and or authorized the plaintiff being placed on "Intractable Cell Status" March 13, 2020 and he remains on this status as of the date of the filing of this complaint. This status is described on page 7 of the JCDC handbook and reads "Intractable/Strip Cell Status dictates that an inmate must remain in the confines of his/her cell, he/she will be denied physical exercise, recreation and showers."

15) The Plaintiff, asserts "Intractable/Strip Cell status" conditions are not in compliance with Illinois state law or the United States Constitution.

16) Since March 13, 2020 a system for the Plaintiff to be allowed to shower was implemented which is supposed to allow him access to shower once every three days. Title 20 section 701.100 b)2) reads "Bathing or showering shall be allowed three times weekly, except as amended by medical advice in individual cases." One shower every three days $1/3$ does not equal three showers every seven days $3/7$. $1/3 < 3/7$. All defendants named herein are aware the Plaintiff is subjected to the system/schedule for showering/bathing supra.

4

17) The Plaintiff is regularly being denied access to shower and when this occurs correctional officers named herein as Defendants are asserting he is refusing his access to shower. Please see Body Camera security evidence from June 4, 7, 10, 13, 2020. Correctional officers are asserting the Plaintiff is not placing his hands out the food pass-thru port to be handcuffed and placed in restraints. This occured on the dates supra at aproximately 0730 to 0830 hrs.

18) On June 13, 2020 at aproximately 0800 hrs Defendants Deyoung, Marcotte, Henshaw, and J. Juergens informed the Plaintiff that it was time for him to be brought to intake to be able to shower. The Plaintiff gathered his hygiene products, towel, undergarments, and other items to shower, etc. He was told to place his hands out the food pass-thru port in the door to be handcuffed. The Plaintiff placed his hands out of the passage to be handcuffed. Defendants supra assert his hands are not out of the passage and refuse to handcuff him. While the Plaintiff's hands were out of the passage waiting to be handcuffed Defendants slamed the passage door onto his hands attempting to shut it. No order was given for the Plaintiff to remove his hands from out of the passage before it was slamed on his hands. Clearly his hands were outside the passage to be cuffed if the passage door was slamed on them, yet the correctional officers assert his hands are not being placed out the passage to be handcuffed. The Plaintiff's left hand fingers were smashed leaving them bleeding and swollen. This physical harm caused him pain and suffering.

5

19) The Plaintiff, has been denied out of cell unrestrained physical recreation time since March 13, 2020. All Defendants named herein are aware of this fact. Once every three days when the Plaintiff is brought to the JCDC intake area to shower —when he is actually brought— he is forced to choose between; showering, shaving and/or grooming himself, completing grievance and/or request forms, using a telephone, physically recreating, and any other hygiene related activities —cliping nails, etc.—. He is only allowed one hour to do these things and he is expected to do all these things other than showering while in restraints —handscuffed and belted to his waist—. The time it takes for correctional officers to restrain and unrestrain the Plaintiff, aswell as the time it takes to transfer him to and from the intake area is counted against the one hour. The Plaintiff cannot utilize/perform the activities supra while restrained in the manner described herein. When the Plaintiff is allowed to shower he is unrestrained and is not seperated from the correctional officers supervising this by any means —no bars, doors, etc. he is in the same area showering where they are standing supervising—. These same correctional officers and additional others are present when he is offered the other services/items supra while in restraints. They assert the restraints are necessary in one area, but not the other, but have provided no explanation why. I have informed all Defendants named herein of my inability to utilize/perform the activities supra while restrained as described herein due to injuries caused by JCDC staff use of force on me —lower back and left shoulder limited range of motion. I have requested accomidations be made and have been denyed.

6

20) The Defendants named herein have not provided the Plaintiff with access to "Barber and beautician services" the entire time he has been housed in JCDC, April 4, 2018 to present date of the filing of this complaint. No detainee housed in JCDC recieves barber services of any type. Under oath at a hearing for case no. 19MR88 -Kankakee County Illinois- Defendant Chad Kolitwenzew testified he provides access to barber tools -whal hair trimmers- for detainees. The Plaintiff is not a barber, and cannot shave or groom himself while his hands are cuffed and belted to his waist. He requires the use of his hands and access to a mirror or similar reflective material, and even then he is still not a barber and would have no way of seeing the back of his head.

*Body camera dates March 30, 2020, April 17, 2020, May 8, 2020*

21) Since March 13, 2020 the Plaintiff has been required to be in restraints if he chooses to use the telephone when offered for legal conference calls with his counsel or the court. He cannot do this due to injuries described in paragraph 19 which were aggravated on May 19, 2020 by JCDC staff use of force, which will be described in a later paragraph herein. Defendants Michael Downey and Chad Kolitwenzew are preventing the Plaintiff's counsel from coming to ~~the jail~~ consult with him and refuse to provide a manner in which he can consult with his counsel that accomidates reasonably for his injuries -he cannot bend hunched over to get the phone to his head without painful discomfort due to injuries. Also he is not provided private access to a phone to confidentrally speak with his counsel. These acts/omissions violate Illinois Compiled Statute Article 103 Rights of the Accused.

*April 24, 2020, May 2, 9, June 12, 2020 Body Camera dates*

7

22) Since March 13, 2020 all Defendants named herein have denied the Plaintiff access to legal materials and services in compliance with; Kankakee County custody policy number 505, Title 20 section 701.230, and United States Supreme Court decisions Bounds V. Smith, 1977 and Johnsen V. Avery, 1969. The Plaintiff is only allowed access to a Illinois Criminal Procedure book -Wests'- which does not contain all the Illinois compiled statutes. The book only has statutes pertaining to criminal procedure and does not contain statutes pertaining to civil procedure, etc. and does not comply with Title 20 section 701.230 a)1). The Plaintiff is in extra restrictive segregation conditions and recieves no assistance with the preperation and filing of his legal actions. He has requested assistance with this in compliance with Johnsen V. Avery, U.S. S.Ct. 1969 and has been denied.

23) The Plaintiff is indigent and due to this he is provided envelopes with no postage embossed for mailing his privileged legal mail. To do this he is required to submit the mail with a postage and copy request. He is not allowed access to this form except when he is brought to the intake area once every three days as described in paragraph 19 herein. Often times this one day for every three is on a weekend and the Plaintiff may only be able to mail his privileged legal mail on the one time during a week he is brought to the intake area on a weekday. Defendants __, Senasac and C. Norton can be seen refusing to accept my privileged legal mail April 26, 2020 on body camera. This same mail had been attempted to be submitted by the Plaintiff since April 15, 2020 and evidence of this can be viewed on security and body camera audio video evidence from April 15, 20, 2020 and every third day from April 17, 2020 e.g. 17, 20, 23, 26 etc. Correctional officers named herein also on numerous occassions have refused to accept the Plaintiff's <u>sealed</u> and clearly labeled as "privileged" mail. These correctional officers assert the JCDC handbook on page 24 reads "All outgoing mail must be given to your housing unit officer <u>unsealed</u>." The Plaintiff does not dispute this, but has informed them of title 20 section 701.180e) "Outgoing Privileged Mail... may be sealed by the detainee prior to submission for mailing." Defendant, Coffey can be viewed refusing to accept the Plaintiff's <u>sealed</u> legal privileged mail due to it being <u>sealed</u> on May 28, 2020 at 1530 hrs this was done on corporal Brinkman's orders. Defendant, J. Juergens also refused to accept sealed mail early that day ~~also~~ on Tod Schloendorf's ~~sergeant~~ orders while wearing a body camera.

9

24) On May 19, 2020 Defendant N. Henshaw threw the Plaintiff on the ground while he was in restraints —hands cuffed and belted to his waist— causing him physical harm and pain. Previous injuries to the Plaintiff's lower back and left shoulder were aggravated and made worse further limiting his range of motion. This event was recorded with the correctional officer's body camera and the security camera of segregation housing unit Max C. The Plaintiff had requested his prescribed ointment from Defendants —. Neufeld and N. Henshaw which at the time was being withheld from him despite physicians orders. He was placed in restraints and brought into the dayroom of SHU Max C, and told he had to apply the ointment while clothed and in restraints, despite informing Defendants supra the ointment needed to be applied to areas of his body he would not be able to reach in restraints, and did not want to expose to them or the other detainee's of SHU Max C. The Plaintiff was told if he wanted to use/apply the ointment he had to do it there, and restrained. Having no choice, needing to apply the ointment to stop the spread of itchy puss filled sores on his body the Plaintiff lowered his pants and underwear to apply the ointment. That is when Defendant, N. Henshaw slamed the Plaintiff to the ground and draged him. Defendant Neufeld witnessed these events and failed to prevent them or protect the Plaintiff asserting this was all being done on sergeant Tod Schloendorf's orders. The Plaintiff has requested to be examined by a medical professional —specialist— concerning his back and shoulder injuries so accommodations can be medically ordered and has not been as of the date of the filing of this complaint.

10

25)     On April 5, 2020 Defendant Sean Liaromatis using his hand balled into a fist struck the Plaintiff's neck and chin making contact of a insulting and provoking nature, and causing the Plaintiff pain and distress. Defendant Sean Liaromatis asserts on April 5, 2020 the Plaintiff threw feces/urine on him when he was attempting to collect the styrofoam tray through the food pass-thru port in the door. The Plaintiff did not throw feces/urine on Defendant Sean Liaromatis. The Plaintiff had requested Defendant Sean Liaromatis to flush his toilet — his toilet has been disabled since January 26, 2019 — for hours before being served dinner, cold and mixed together in a non thermally insulated styrofoam tray. Defendant Sean Liaromatis refused to flush the Plaintiff's toilet causing the Plaintiff to have to eat in a small confined area with a unflushed toilet containing feces and urine. The Plaintiff scooped the contents of the toilet out and into the styrofoam tray with a paper milk carton, and when Defendant Sean Liaromatis requested the styrofoam tray be returned at the end dinner meal service time, the Plaintiff handed — not threw at — it to Defendant Sean Liaromatis, who upon realazation of the contents threw the tray on the ground, swore loudly, unlocked the Plaintiff's cell door, entered and struck him, then in a panic fled the housing unit. Please see Defendant Corporal Brinkman's statement concerning the event. Detainee's whom witnessed these events names are Justin Anaya and Sergio Sandoval jr. I will be requesting the court order I be allowed to correspond with them to obtain declarations.

11

26) The Plaintiff is under imminent danger of serious physical injury while he is housed in JCDC. More than eight staff members of JCDC assert the Plaintiff has committed criminal offenses against them. These staff members are regularly allowed to serve him his food, make decisions regarding his access to potentially life saving medical device — emergency rescue inhaler —, make decisions regarding him recieving his prescribed medications, decide if he will be allowed to shower, submit mail, etc., decide if his toilet will be flushed, decide if he is brought to court or allowed to speak with the court or counsel via phone scheduled conference call. Since being returned to JCDC March 2, 2020 the Plaintiff has been injured by JCDC staff on more than 3 occassions.

27) The Plaintiff, subjected to conditions violating his Constitutional rights has suffered emotional distress and aggravation of his psychological condintions causing manic episodes. His toilet not being flushed for days at a time caused him to become ill requiring treatment and the fear of becoming ill again has caused him to try to eliminate feces and/or urine from his cell by various unhygenic ways or to smear feces on the cell door window or walls in hope he would be removed from the cell. He was not removed from the cell and the feces and/or urine was not cleaned by JCDC staff, nor was the Plaintiff allowed cleaning supplies to perform the task himself. He has requested treatment for his psychological conditions by a specialist — psychologist — and been ignored or denied.

28)     Defendants Michael Downey and Chad Kolitwenzew have ordered the Plaintiff - and all other detainee's of Kankakee County Jails - be denied his right to consult with his attornies at his place of confinment and in private, in violation of 725 ILCS 5/103-4 Rights of the Accused. This has been occuring since his return to JCDC March 2, 2020 and has happened on numerous occasions throughout his confinment at JCDC. Covid-19 pandemic taken into consideration they have failed to make reasonable other electronic A/V communication with counsel possible. The Kankakee County Courts are setting matters for trial or attributing delay to the Defendant. ~~[scratched out]~~ The Plaintiff is scheduled for jury trial July 6, 2020 and has not been allowed to consult with his attorney to adequately prepare. More than 4 Attornies have informed the Court of being denied the ability to consult with the Plaintiff at various times of his confinment their names are as follows: Bart Beals of Chicago, IL, Trey Brasel of Bourbonnis, IL, Gus Regas of Kankakee, IL, Kirsteen Steeves of Peotone, IL, and a assistant public defendor with a last name of Johnson of Kankakee, IL. Kankakee County case no. 15CF622 which

    Attorney Bart Beals represents the Plaintiff for has previously been scheduled for trial - June 2019 - and could not proceed due to Counsel not being allowed to consult with the Plaintiff.

29) The Plaintiff upon return to JCDC on March 2, 2020 was brought directly to be housed in disciplinary segregation. He had not recieved a disciplinary hearing since prior to August 15, 2019 at which time his disciplinary segregation end date was January 31, 2020. When the Plaintiff filed request and grievances by way of electronic wall mounted kiosk in March of 2020 he was informed hearings had been conducted without him and statements of alleged misconduct were placed within his personal property (which was being withheld from him at the time. - Intractable/Strip Cell status-) and he had been sanctioned to remain in disciplinary segregation through July 2020. This process of denying hearings has continued — he is not allowed to be present at a hearing or call witnesses or present any evidence in his defense — with the only change being since March 2020 he now recieves the statements of alleged misconduct. On March 2, 2020 the Plaintiff had comitted no disciplinary misconduct and had not so much as spoken to JCDC staff other than to inquire when he would recieve his hygiene and legal materials. He was brought directly back to segregation housing unit Max C cell one. The same cell he was housed in prior to transfer to Livingston County. The cell had still not even been adequately cleaned and had a foul odor to it. The Plaintiff has ~~recieved other continued disciplinary type in compliance with title 20 section 707.160~~ not been afforded a disciplinary process in compliance with title 20 section 707.160 or the JCDC handbook. Defendants have failed to comply with Kankakee County custody policy 505 regarding the Plaintiff's confinement.

14

30) Defendant, Michael Downey, is the Sheriff of Kankakee County and he is responsible under state statute for the overall operation of the JCDC. He was made aware of the conditions the Plaintiff describes herein by the Plaintiff and has continued to allow them.

31) Defendant, Chad Kolitwenzew, is the Director of JCDC, and he is responsible for the day to day operation of the JCDC. He was made aware of and authorized the conditions the Plaintiff describes herein by the Plaintiff and has continued to allow them.

32) All correctional officer Defendants named herein were aware of or imposed the conditions described herein and are required by Illinois state statute Title 20 Section 701.10 a) to have been "trained as provided by the Illinois Police Training Act [50 ILCS 705/8.1]" and "shall be familiar with these standards", i.e., the Illinois County Jail Standards Administrative Code, and either by acts or omissions subjected the Plaintiff to conditions in violation of his constitutional rights. When asserting "imposed the conditions" supra the Plaintiff is asserting whether done, because a superior ordered the acts and/or omissions or not, Defendant correctional officers named herein had a duty to be familiar with state law and a detainee's constitutional rights and not violate them.

15

— Legal Claimes —

The Plaintiff realleges and incorporates by reference paragraphs 1 —

The Defendants named herein violated rights of the Plaintiff afforded him by the United States Constitution and its Amendments as follows:

1st Amendment right to peaceably seek redress of grievances from the goverment and to access the courts

5th Amendment right to due process before being deprived of his property and liberties

6th Amendment right to assistance of counsel and to recieve a speedy and public trial by a jury of his peers.

8th Amendment right to not be subjected to cruel and unusual punishment

14th Amendment concerning violations of Illinois state law and Constitution

— Relief Sought —

Declatory relief: The Plaintiff seeks a declaration from the Court the Defendants violated his rights afforded him by the Constitution and laws of the United States of America.

Injuctive relief: The Plaintiff seeks a preliminary and permanent injuction ordering the Defendants to comply with; any U.S. Supreme Court decision concerning conditions or events described herein, any U.S. law or Constitutional ~~requirement~~ requirment concerning his treatment and conditions of confinement, any Illinois state law, statute, or other legislation concerning his treatment and confinement, and any administrative rule or policy of the Kankakee County Sheriff's department corrections divsion or otherwise concerning his treatment and confinement which the Court believes the Plaintiff has proven the Defendants have violated and/or are continuing to violate, and for a indivrdual to be assigned by the Court to ensure the Defendants compliance with the Courts orders.

Compensatory damages in the amount of 25,000$ against each Defendant indivirdually and collectively.

Punitive damages in the amount of 100,000$ against each Defendant individually and collectively.

A jury trial on all issues trialable by jury.

Any other relief the Court deems equitable, just, and proper.

17

— Verification —

The Plaintiff, Jacob P. Pitts, under oath and penalty of perjury declares the facts asserted herein are true and accurate, to the best of his knowledge.

*Jacob P. Pitts*
June, 14, 2020

Respectfully Submitted,

*Jacob P. Pitts* esq.
JCDC no. Z00981
3050 S. Justice Way
Kankakee, Il 60961

18